Martir, Plaintiff and Appellant, v. Pérez, Defendant and Appellee.

Appeal from the District Court of Aguadilla in an Action of Debt and for Damages.

No. 3200.—Decided August 2, 1924.

Debt—Damages—Payment of Purchase Price—Cause of Action.—The payment of the purchase price being contingent under the contract upon the execution of a deed free of encumbrances, the vendor has no cause of action for the purchase price and damages until he has executed such a deed.

Id.—Id.—Purchase and Sale—Encumbrance—Rescission of Contract—Cause of Action.—As the contract of purchase and sale did not specify that the property was free from encumbrances and the evidence did not show that the vendor concealed from the vendee the existence of a mortgage on the property, or that the mortgage had not been recorded when the sale was made; and it not appearing that the contract depended upon whether the property was free from the encumbrance that was afterwards cancelled; and the evidence of the damages claimed in the counter-complaint not being satisfactory, it follows that the vendee had no cause of action for rescission and damages under section 1091 of the Civil Code.

The facts are stated in the opinion.

*Mr. E. Negrón Benítez* for the appellant.

*Mr. B. Esteves* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff brought suit for the recovery of money as the balance due on certain deferred payments representing a portion of the purchase price involved in a real estate transaction and for damages arising out of an alleged breach of contract and failure to meet such instalments.

Defendant upon answering filed a counter-complaint and the court after a trial on the merits rendered a judgment in favor of the defendant and counter-plaintiff which is in substance as follows:-

"Therefore, the complaint is dismissed and the plaintiff is adjudged to pay the costs, disbursements and attorney's fees.

"As to the counter-complaint the court decides to sustain it and consequently to order the rescission of the contract of sale to which this action refers and which is copied in the complaint and is the same on which the counter-complaint is based, it being ordered that the counter-defendant Agustín Martir Vientos restore to the counter complainant Leocadio- Pérez the $400 received from the latter in part payment of the price of the sale in question, with legal interest from December 31, 1920, and that the counter-complainant restore to the counter-defendant the rural property of 16½ acres of land (describing it) together with the products of the property, in accordance with the provisions of sections 1091 and 1262 of the Civil Code. The plaintiff and counter-defendant is further adjudged to pay to the defendant and counter-plaintiff the sum of $200 as damages in accordance with the fifth paragraph of the contract between the parties."

From a statement filed by the trial judge we take the following extract:

"After carefully considering the pleadings of both sides and the evidence examined at the trial the court makes the following findings:

"That in the month of January, 1920, Agustín Martir Vientos and Ricardo Ríos entered into a contract of sale of a rural property under the following stipulations and conditions:

"1.—Agustín Martir states that he is the the owner in fee of the following property: (describing it.) He further states that the title deeds are duly recorded in his name.

"2.—That he has agreed to sell to the other party, Ricardo Ríos, the above described parcel with everything contained in it and appertaining thereto, for the stipulated and agreed sum of $200 in cash at this moment and $1,000 with interest at 5% annually in three instalments, as follows: one instalment for $300 on December 31, 1920; one of $350 on December 31. 1921; and another of $350 on December 31, 1922, adding to each instalment the corresponding interest at the stipulated rate of 5%.

"3.—Agustín Martir agrees to execute the corresponding public deed of sale of the described property in favor of Río, on any day of this month of December, 1920, free from all lien or encumbrance.

"4.—Ricardo Río agrees to make, as soon as he receives the deed of sale, promissory notes in favor of Martir for the amount stipulated in the second paragraph of this contract.

"5.—It is agreed that either of the parties who should decide in future not properly to comply with the stipulations of the present contract shall indemnify the other for the damages sustained by reason of the non-performance.

"(b) That two or three months afterwards Ricardo Río assigned his rights and obligations under the said contract to Leocadio Pérez, here defendant and counter-plaintiff, who became subrogated in the place of the vendee with the knowledge and consent of the vendor.

"(c) That Leocadio Pérez paid and Agustín Martir received, on account of the price of the said sale, the sum of $400, that is, $200 at the time of making the contract and $200 on account of the first instalment two or three days before it became due.

"(d) That Agustín Martir did not execute the deed of purchase and sale as he had agreed to, either in 1920 or afterwards.

"(e) That the property sold by the contract was encumbered by a mortgage for $540.34 created by Agustín Mártir in favor of one José González, a fact unknown by Leocadio Pérez when he made the deal and of which he became aware in March of 1921, for which reason and for the reason that the deed of purchase and sale had not been executed in his favor he discontinued the payment of the instalments; and that the said mortgage was canceled on January 30, 1922, by deed No. 11 executed in San Sebastián before notary Eduardo Negrón Benítez, which does not appear to be recorded.

"(f) That Leocadio Pérez was always ready and willing to perform his part of the contract and Agustín Mártir acted in bad faith

and with evident temerity in refusing to execute the deed of purchase and sale and permitting the mortgage on the property to subsist, which mortgage, besides, does not appear to have been recorded in the registry.

"(g) That Leocadio Pérez failed to earn the sum of $200 because when he attempted to sell the property acquired from the plaintiff he was unable to make the sale on account of the mortgage.

"The plaintiff bases his action on section 1091 of the revised Civil Code, as stated in the brief filed after the trial. The court is of the opinion that said section is not applicable to the complaint herein and that the facts there stated are rather those of an ordinary action of debt. These facts were not proved to the satisfaction of the writer.

"If we examine the plaintiff's evidence carefully we will see that he sought to have the defendant pay the whole of the first instalment *before it became due* and that notwithstanding this he never executed the deed which he agreed to. The plaintiff attempts to explain this by saying that he went to the house of defendant with one Rafael García for the purpose of executing the deed and canceling the mortgage (of which the defendant still knew nothing) and that the defendant refused; but the court has given no credit to this testimony. After December of 1920 the plaintiff made no demand of payment until June or July when, according to the witness Salvador García, he met the defendant on the road hauling some gravel and invited him to settle the matter. Yet it is strange that the plaintiff on that date had not yet executed the deed of purchase and sale or canceled the mortgage existing on the property. It might rather be said that he was avoiding the matter, although the defendant had already complained that he had failed to make a profitable sale by reason that the propetry was mortgaged.

"We cannot fail to call attention to the fact that the defendant had changed his residence to Santurce (San Juan) since August, 1921, and that afterwards he came to San Sebastián in October of the same year to visit his relatives and returned to Santurce two days after; and then he came again in February of 1922 after he had been summoned in this case and notified of the attachment of his properties, it appearing from the record that the corresponding returns were made and signed by the Marshal of the First District Court of San Juan at 2 p. m. on February 16, 1922, at No. 63 Cerra Street in Santurce, service being made personally upon Leocadio Pérez. Admitting this to be true it is not possible that the plaintiff made demand of payment upon the defendant on December 31, 1921.

And it is only upon receiving a letter from defendant's attorney (January of 1922) that Mártir makes another move in the matter and finally brings action against Leocadio Pérez who, however, seemed desirous of avoiding this.

"The court has not the least doubt concerning the temerity of the plaintiff, and is fully convinced that he did not perform his obligations under the contract involved in this suit. This being so, he has no right to demand payment of the deferred part of the price and has no action to compel the defendant in this connection.

"The language of the contract, which we have transcribed, is quite clear and there is no doubt concerning the intention of the parties. The third paragraph read thus:

" 'Agustín Mártir agrees to execute the corresponding public deed of sale of the described property in favor of Río, on any day of this month of December, 1920, free from all lien or encumbrance.'

"And the fourth paragraph reads as follows:

" 'Ricardo Río agrees to make, as soon as he receives the deed of sale, promissory notes in favor of Mártir for the amount stipulated in the second paragraph of this contract.'

"It may be seen, therefore, that Agustín Mártir was under the obligation to execute the deed of purchase and sale *free from all lien or encumbrance,* on any day of the month of December, 1920. He was not to wait until the vendee had paid the first instalment. And it was not until after Mártir had performed this condition that Pérez became obliged to make the promissory notes for the deferred part of the price. Could Mártir execute the deed in the manner agreed upon while the property was mortgaged without the knowledge of Pérez?

"We think that the terms of the contract are perfectly clear and leave no doubt as to the intention of the contracting parties, for which reason the literal sense of its stipulations must be observed. (Sec. 1248 of the Civil Code.)

" (See in this connection what Manresa says in commenting upon this section, which corresponds with section 1281 of the Spanish Civil Code, in volume 8 of his work Commentaries to the Civil Code, p. 704, and also the judgments of the Supreme Court of Spain of December 15, 1871, June 21, 1872, and June 30, 1890.)

"In his answer the defendant alleges that he was never asked by the plaintiff to meet him for the execution of the deed which he had agreed to; that when the first instalment became due he handed to the plaintiff $200 on account of the $300 and demanded of him the execution of the deed of sale free from all encumbrance, as provided

in the contract, keeping $100 until the deed should be executed; that the plaintiff did not cancel an encumbrance on the property the existence of which became known in the year 1921, for which reason the defendant refused to continue paying the instalments until the encumbrance should have disappeared, etc.

"This defense of the defendant is based on section 1405 of the revised Civil Code, which reads thus:

" 'Sec. 1405.—Should the vendee be disturbed in the possession or ownership of the thing acquired, or should have reasonable grounds to fear being disturbed by an action for recovery or mortgage suit, he may suspend the payment of the price until the vendor has caused the disturbance or danger to cease, unless he gives security for the restitution of the price, in a proper case; or should it have been stipulated that, notwithstanding any such contingency, the vendee shall be bound to make the payment.'

"The mortgage here was not recorded; it was not mentioned in the contract, nor was Leocadio Pérez informed of it. It is not until March of 1921 when, in attempting to sell the property, he discovers the existence of the mortgage and complains to Mártir that through the latter's fault he has been unable to put over a deal wherein he would have made a profit of $200.

"Applying to this case the clear provisions of section 1405, *supra,* there is no doubt that Leocadio Pérez acted correctly in suspending payment of the deferred part of the price, for fear that he would be disturbed in his possession by an action of foreclosure.

"For these reasons and specially because of plaintiff's failure to perform his obligations under the contract, the court is of the opinion that the just thing to do is to dismiss the complaint and adjudge the plaintiff to pay costs and attorney's fees. And as to the action for damages brought by the plaintiff the court understands that there is no basis for sustaining it and, therefore, it is also dismissed.

"Let us now consider the counter-complaint. There the counter-plaintiff prays the court to decree the rescission of the contract of sale involved herein, for the failure of the counter-defendant to do what he was bound to do under the contract and that the provisions of section 1262 of the revised Civil Code be observed, and, also, that the counter-defendant be adjudged to pay the counter-plaintiff the sum of $200 as damages.

"This action is based on the provisions of section 1386 and 1091 of the revised Civil Code.

"We doubt whether the provisions of section 1386 are applicable to this case, for according to its second subdivision the vendee may

bring the rescissory action within one year after the execution of the instrument, and as in this case the deed has not been executed there is no basis for computing the time fixed by the said section.

"But there is no doubt as to the applicability of section 1091, which corresponds with section 1124 of the Spanish Civil Code.

" 'Sec. 1091.—The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

" 'The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfillment, should the latter appear impossible.'

"We have already said that Agustín Mártir did not comply with his obligations under the contract and that, therefore, Pérez could elect between exacting the fulfillment thereof or asking for the rescission of the sale, recovering also damages and interest."

For the purposes of this opinion it may be admitted that the defendant was not bound to pay before the tender of a deed of conveyance of the property in question free from encumbrance, and that there is no such manifest error in the weighing of the evidence in this connection as to justify a reversal of the judgment in so far as the dismissal of plaintiff's complaint is concerned. But we can not concur in the conclusion that the plaintiff should be adjudged to pay costs, disbursements and attorney's fees.

Nor do we find any appreciable advantage in favor of the defendant as to good faith, honesty of purpose and disposition to carry out the terms and conditions of the contract.

The agreement of purchase and sale did not specify that the property was already free from encumbrance, nor do we find anything upon which to base such an inference. There is no evidence to show that the existence of a mortgage was concealed from Río or that he had no knowledge of it. His only statement on this point, made while testifying as a witness for plaintiff, is as follows:

"When I made assignment to Leocadio Pérez it was in accordance with the conditions of my contract with Mártir. I did not tell Leo-

cadio Pérez that the property was mortgaged to González because I sold it to him under the same conditions under which I had bought. I sold what I bought and Pérez agreed to accept the deal as I had made it with Mártir."

This witness was not cross-examined on this point nor at all by defendant.

The cancellation of mortgage says that the latter was recorded, citing the volume and page without giving the date of the entry. There is nothing to show that it had not been recorded at the time of the contract of purchase and sale entered by Ríos. But whether it had been so recorded or not or whether or not the defendant in this case had knowledge of its existence is a matter of no importance for, as already intimated, the contract of purchase and sale was not, either by inference or otherwise, contingent upon a pre-existing freedom from encumbrance.

The proof of the damages alleged to have been sustained by the defendant by reason of his loss of a re-sale is most unsatisfactory. The testimony of the defendant on this point is as follows:

"I became aware that the property was mortgaged in March of 1921, when my brother and myself were negotiating a purchase and sale. I could not sell the property because it was mortgaged. My brother, Juan Bta. Pérez, offered me $1400 for the property, $400 to be paid at the time of the sale and the balance in two instalments of $500 each payable, respectively, on December, 1921, and December, 1922. I could not carry out the said deal because I did not have a deed and thereupon went to ask Mártir for the deed and he replied that José González had it but we would have to wait until Saturday to execute it as González stayed in the town of San Sebastián only from Friday to Monday every week. Then I asked my brother, Juan Bta. Pérez, whether he could wait until Saturday for making the deal and he told me that he could not wait.

"　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

"I became aware that the property was mortgaged when I went to ask Mártir for the deed and he told me that there was a mortgage on the property in favor of José González and I would have to wait

until Saturday to get the deed because then González would be in
San Sebastián. I was ready to perform the contract in question in
December, 1920, and early in 1921 because I did know that the
property was mortgaged.

   " *   *   *   *   *   *   *

"In March of 1920, when I was making negotiations with my
brother Juan Bta. Pérez concerning the property, I asked Agustín
Mártir to give me the deed. The deal with my brother was that
I would sell him the property for $1,400, $400 to be paid when
making the sale and the remaining $1,000 in two instalments, but
because I had not the deed I could not make the transaction with
my brother Juan Bta. Pérez.

"I knew that the property was mortgaged because Mártir told
me when I went to his house for the deed. He told me to wait until
the end of the week when José González, who had a mortgage on the
property, would have come. This happened in March of 1920. My
brother then desisted of making the deal."

## The statement of the brother is as follows:

"My brother Leocadio Pérez and myself have had several dealings
concerning real estate. I have purchased several properties from
him. Now we had a deal concerning the property of 16½ acres in
the ward of Piedras Blancas. I say now because it was the last one.
This deal took place in January of 1921, in March of 1921. This
was in March of 1921. The deal was that he sold me the property
for $1,400 of which I would have to pay $400 cash and $1,000 in
two instalments of $500 each. The deal was done but two or three
days after I heard that the property was mortgaged and desisted of
making the deal. Afterwards I purchased from him another prop-
erty as we had been unable to close that deal. My brother was sell-
ing the property in order to remove to Santurce. He went away
in August of 1921.

"On cross-examination by counsel for counter-defendant he tes-
tified:

"I went around the property before purchasing it. This was in
March of 1921. I was accompanied by my brother Leocadio Pérez
and a farm hand whom my brother permitted to live there. I do
not know whether his name was Ramón Mercado or Juan or Pedro.
This farm hand was not Ramón Ricardo; it was somebody else whom
my brother had there.

"I desisted of making the deal with my brother because I was told that the property was mortgaged and I generally invest my money where it will be safe. I do not like properties that are mortgaged. Therein lies the danger. I never risk my money."

Thus it appears that, in so far as the brother's alleged change of mind is concerned, the obstacle was not a request for an extension of two or three days, but the existence of the mortgage which the vendor offered to cancel as an incident to the performance of his obligation.

The gist of the counter-complaint is this failure to execute a deed immediately when demanded in March of 1921. All previous omissions and delinquencies, if any, were for all practical purposes waived. The demand made by the plaintiff in December, 1921, according to his own testimony, was by letter after two or more conversations with defendant's wife in San Sebastián, from whom the plaintiff obtained the address of the defendant in Santurce. There was no claim as to a personal interview with the defendant at the time. The defendant admits having received the letter, which he referred to his attorney. The latter then addressed a communication to the plaintiff and the filing of the complaint followed.

Defendant's lessee, apparently in possession from a time antedating the alleged unsuccesful negotiation with the brother, stated that the latter never visited or examined the property, as stated in his testimony. All the circumstances point to a deliberate purpose, which seems to have been announced by the defendant in June of 1921, to "get out of the property what it had cost him and let the devil take the rest."

It does not appear that the defendant at any time before the filing of the complaint offered to surrender possession or otherwise re-establish the *status quo*. The time within which the plaintiff was to execute a deed can hardly be regarded

as the essence of the obligation; and the technical breach, if any, on the part of the plaintiff, did not vitiate the contract. In any event the only breach of which the appellant complains, if not condoned or waived, was at most *damnum absque injuria.* The plaintiff never at any time refused, but on the contrary was at least quite as much disposed as was the defendant, to perform his part of the contract.

All things considered, we find nothing strange in the mere omission to cancel the mortgage or deliver a deed prior to the demand made in July of 1921; and aside from the characterization of this omission as "strange" there is no discussion by the trial judge of the evidence as to the effort made by plaintiff to bring about a mutual performance of the obligation then existing.

In the circumstances, and assuming, as we do, that the court below was justified is not accepting as true in all respects the oral evidence for the plaintiff, the case seems to be pre-eminently one in which the parties should be left in the same position in which they were at the time the complaint was filed, each to pay his own costs; and in passing we may add that if counsel were to be adequately compensated for the time and labor employed their fees would probably exceed the amount in controversy.

The judgment appealed from must be affirmed in so far as the dismissal of plaintiff's complaint is concerned, and reversed in all other respects; and in lieu of such other pronouncements judgment will be rendered by this court dismissing the counter-complaint and ordering that each of the parties shall pay his own costs, disbursements and attorney's fees.

*Affirmed in part.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.